**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**EDDIE MELTON**                                                                           **PLAINTIFF**

**vs.**                                                      **CIVIL ACTION NO. 2:11CV157-SAA**

**MICHAEL ASTRUE,
Commissioner of Social Security**                                         **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Eddie Melton for supplemental security income payments under Section 1614(a)(3) of the Act. Plaintiff applied for benefits on May 24, 2007, alleging disability that he became disabled on September 9, 2002 due to "paranoia." Docket 7, p. 125. The plaintiff's claim was denied initially on October 5, 2007 and on reconsideration on December 4, 2007. *Id.* at 56-61. Plaintiff timely requested a hearing on January 25, 2008 (*Id.* at 66) and testified at the administrative hearing that was held on November 12, 2009. *Id.* at 30-51. The ALJ issued an unfavorable decision on November 23, 2009. *Id.* at 19-29. The Appeals Council denied plaintiff's request for a review on May 27, 2011. *Id.* at 5-9. The plaintiff timely filed this appeal from the Commissioner's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

**I. FACTS**

The plaintiff was born on September 19, 1957 and was fifty-two years old at the time of

the ALJ's decision. Docket 7, p. 94. He completed the eleventh grade in 1978 and obtained his GED while in prison. *Id.* at 39, 129. The ALJ determined that he had no past relevant work. *Id.* at 25. He contends that he is disabled because he suffers from paranoia and finds it difficult to get along with others. When taking his application for benefits, the field office noted "[h]e insisted on filing because he had read some literature circulating around the prison that states former felons automatically qualify for benefits upon release." Docket 7, p. 122. The ALJ rejected his claims of disability, concluding that even though the plaintiff had a severe impairment and does not have any past relevant work, there nevertheless were jobs which existed in significant numbers in the national economy which plaintiff could perform. Consequently, she found plaintiff was not disabled.

Plaintiff claims that the ALJ erred by relying on flawed vocational expert testimony to determine that plaintiff can perform jobs that exist in the national economy and that the ALJ failed to properly examine the opinion of plaintiff's treating physician, including contacting the treating physician to resolve any conflict or ambiguity with regard to the physician's opinion.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First,

---

[1] *See* 20 C.F.R. § 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to

---

[3] 20 C.F.R. §416.920(b) (2010).

[4] 20 C.F.R. §416.920(c) (2010).

[5] 20 C.F.R. §416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §416.920(e) (2010).

[7] 20 C.F.R §416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

**A. Whether the ALJ properly relied upon the testimony of the vocational expert.**

Plaintiff argues that the ALJ's ultimate opinion was not supported by substantial evidence because the testimony of the vocational expert ("VE") was flawed. Docket 12, p. 6. The ALJ's

---

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

hypothetical to the VE involved an individual who had no exertional limitations, but could "maintain concentration for two-hour periods at a time" and who "would at most be able to perform simple, routine, repetitive tasks involving only simple, routine, work related decisions and occasional interaction with the general public." Docket 7, p. 48-49. In response, the VE testified that plaintiff could perform three medium exertional level jobs -- produce packer, groundskeeper and trim helper, and a light level job of a products assembler. *Id.* The VE testified that his opinions were consistent with the Dictionary of Occupational Titles [DOT]. *Id.* at 50.

Plaintiff argues that theVE's testimony contradicts the Dictionary of Occupational Titles ("DOT") because the jobs identified require mental abilities beyond those included in the hypothetical and RFC. Docket 12, p. 8. The DOT indicates that occupations identified by the VE entail level 2 reasoning development which requires "commonsense understanding to carry out detailed instructions by uninvolved written or oral instructions. Deal with problems involving few concrete variables in or from standardized situations." Plaintiff asserts that the ALJ's RFC finding plaintiff is limited to "simple, routine repetitive tasks involving simple work related decisions" is inconsistent with occupations requiring level 2 reasoning development. Docket 12, p. 8. Plaintiff argues that the RFC is consistent with level 1 reasoning development which requires "commonsense understanding to carry out simple one or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* This conflict, according to plaintiff, is the "direct" type that requires further clarification by the ALJ than that that occurred in the instant case.

According to the Secretary, there is no conflict between the DOT and the VE testimony:

"Plaintiff's argument is inherently based on the premise that terms used in the DOT have the same meaning as their use in the Commissioner's regulations, but courts have refused to accept that analysis." Docket 13, p. 10. The Secretary directs the court to *Veal v. Social Sec. Admin.*, 618 F. Supp. 2d 600 (E.D. Tex. 2009), in which plaintiff made the same argument that Mr. Melton makes here. Veal argued that an RFC limiting plaintiff to simple, one- to three-step repetitive tasks, directly conflicted with DOT reasoning level 2. The *Veal* court held that

> vocational expert testimony that a person whose capacity is limited to performing simple, one to three-step, repetitive tasks can perform jobs with DOT reasoning levels 2 or higher may or may not conflict with the DOT. This uncertainty both underscores and validates the Fifth Circuit's "middle ground" rule which requires that possible conflicts be developed at the administrative level through adversarial cross-examination of the vocational expert witness.

*Veal*, 618 F.Supp.2d at 613.[11] In another almost factually identical case, the same court held that

> a limitation of 'simple one or two-step tasks on a repetitive basis where concentration really isn't required' does not necessarily preclude ability to perform jobs with reasoning levels of 2 or higher. Indeed, several other cases either hold or intimate that a limitation to simple and repetitive tasks is consistent with a reasoning level of 2.

*Gaspard v. Social Sec. Admin.*, 609 F. Supp. 2d 607, 617 (E.D.Tex. 2009). The *Gaspard* court noted that it was possible that some jobs requiring reasoning level 2 or higher *may* conflict with the limitations placed on plaintiff by the RFC, but ultimately held that because the possibility was only arguable, the conclusion was not an obvious or direct conflict. *Id.*

The Fifth Circuit has routinely found that "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions

---

[11]As a matter of note, the *Veal* court ultimately held that because the plaintiff did not raise the issue of conflict between the DOT and VE testimony at the ALJ level, it was waived on appeal. Because Mr. Melton was not represented at the ALJ level, the court will not consider the argument waived.

and the attributes and skills needed." *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986). "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.* In articulating the "middle ground" rule, the Fifth Circuit has held that "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . we agree with the majority of circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). As further explained by the Circuit,

> all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development at the administrative hearing.

*Id.*

Mr. Melton's case is almost identical to the plaintiffs in both *Gaspard* and *Veal*. In all three cases, the ALJ found that plaintiffs could perform simple one- or two-step tasks, but the VE testified that plaintiffs could perform jobs that required level 2 reasoning. In all three cases, the VE testified that no conflict existed between his opinion and the DOT, and the ALJ was satisfied that he could rely upon the VE's testimony. There is nothing in Mr. Melton's record to indicate that the VE's testimony that plaintiff can perform the jobs requiring level 2 reasoning is incorrect or contradictory to the DOT. Therefore, the ALJ's reliance upon the VE's testimony was proper and the ALJ's decision was supported by substantial evidence.

**B. Whether the ALJ properly considered the treating physician's opinions.**

Plaintiff contends on appeal that the ALJ's ultimate opinion is not supported by substantial evidence because he did not afford proper weight to his treating physician's opinions and failed to contact the treating physician to resolve conflicts and ambiguities with regard to his opinions. Docket 12, p. 10. Although plaintiff's brief submits that he had been treated by Dr. McGee at Region One since 2007, the record only reflects three visits in 2009: March 30, April 28 and July 21. *Id.* All three of his visits reflect that plaintiff was "doing fairly well" and "is much better when he is taking the medicine." Docket 7, p. 199. Dr. McGee provided a Medical Source Statement on November 6, 2009 in which he opined that plaintiff suffered from major depressive disorder, recurrent, and a history of drug and alcohol abuse in remission, and has a fair ability to follow work rules, relate to co-workers, interact with supervisors and function independently. Docket 7, p. 197. Dr. McGee also opined that plaintiff has poor to no ability to deal with the public, deal with work stressors or maintain attention and concentration. *Id.*

The Secretary responds, and this court agrees, that the ALJ properly discounted Dr. McGee's opinions because they were not supported by objective, clinical evidence. For an ALJ to properly afford lesser weight to the treating physician's medical opinions, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Because the ALJ did not follow these criteria, says plaintiff, his refusal to afford controlling weight to Dr. McGee's opinions was error as a matter of law. The Commissioner responds that *Newton* does not apply to this case because the record provides "good cause" for the ALJ's finding that the treating physician's opinion was not entitled to controlling weight. Docket 12, p. 13-16.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification will be sought when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1).

The ALJ properly considered the length and frequency of treatment and the type of treatment received, including the fact that plaintiff's care was infrequent and his medication dosage levels remained consistently stable and without radical changes. Docket 7, p. 24. The ALJ noted that the apparent lack of treatment "indicate[s] that he does not observe problems that require intensive treatment." *Id.* Additionally, the ALJ considered the brief medical record which contained visits with other physicians at Region One including Dr. Leal and Dr. Carroll, who both documented that plaintiff suffers from major depressive order, moderate to severe, recurrent, but whose findings are inconsistent with plaintiff's alleged impairments. The court concludes that in light of the objective evidence, the opinions from consultative and other treating physicians and the plaintiff's testimony, the ALJ had sufficient evidence to determine plaintiff's impairments and to make the ultimate decision regarding disability without re-contacting Dr. McGee for further information or clarification.

Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, identified the relevant listed impairments, discussed the evidence that was contained in the record

9

and concluded that the balance tipped toward functional ability in determining whether the plaintiff's impairments met or equaled a listed impairment. The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the treatment records of the plaintiff's treating physician Dr. McGee, other treating physicians including Drs. Leal and Carroll, as well as the consultative exams performed at his request. The plaintiff did not provide any evidence that his alleged impairments affect his ability to work, and the ALJ adequately explained her reasons for questioning the plaintiff's credibility. Therefore, the undersigned holds that the decision of the Commissioner should be affirmed.

## VI. CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ was supported by substantial evidence, that a substantial number of jobs exist in Mississippi or the national economy which plaintiff can perform in spite of his limitations and plaintiff is not entitled to benefits under the Social Security Act. This case is affirmed and a final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 26th day of March, 2012.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE